## BOSARGE et al. v. STATE. (1 Div. 804.)

Court of Appeals of Alabama. Dec. 11, 1928.

Rehearing Denied Jan. 8, 1929.

Smiths, Young & Johnston, of Mobile, for appellants.

Charlie C. McCall, Atty. Gen., for the State.

RICE, J. Appellants were jointly charged, regularly tried, and convicted of the offense of violating the terms of Code of Alabama 1923, § 4078, which section reads as follows:

"No person who has not been a bona fide resident of the state of Alabama for one year, then passed, shall catch or attempt to catch any salt water shrimp, within the waters of the state of Alabama, or within the waters subject to the territorial jurisdiction of said state, by the use of any seine or other device for the purpose of catching salt water shrimp."

As the case is presented here on appeal, the sole question for our consideration is: Did the trial court err in finding as a matter of law that the place where appellants were apprehended, in the act of trolling for shrimp, was a place "within the waters of the state of Alabama, or within the waters subject to the territorial jurisdiction of said state?" There is no dispute in the testimony; none being offered by defendants.

■ According to the bill of exceptions, appellants, at the time mentioned above, were, southwardly, "outside of Dauphine Island, about three-quarters of a mile from the beach, and outside of the low-water mark in the Gulf of Mexico; that is to say, about three-quarters of a mile from the beach." We judicially know, and said bill of exceptions further recites, that "Dauphine Island is in Mobile county, Alabama."

' ■ The boundaries of the state of Alabama are, as defined in section 85 of the Code of 1923, as follows:

"Beginning at the point where the thirty-first degree of north latitude crosses the Perdido river; thence east to the western boundary line of the state of Georgia; thence along said line, to the southern boundary line of the state of Tennessee; thence west along the southern boundary line of the state of Tennessee, crossing the Tennessee river, and on to the second intersection of said river by said line; thence up said river to the mouth of Big Bear creek; thence by a direct line, to the northwest corner of Washington county, in this state, as originally formed; thence southerly along the line of the state of Mississippi to the Gulf of Mexico; thence eastwardly, *including all islands within six leagues of the shore*, to the Perdido river; and thence up the said river to the beginning."

We think, and hold, that since Dauphine Island is admittedly *one* of the "islands within six leagues of the shore," referred to in the above description, and since there is no other such island lying *south* of Dauphine Island, necessarily the southern boundary line, or coast line, of Dauphine Island became the southern boundary line of Alabama.

■ In the case of Manchester v. Massachusetts, 139 U. S. 240, 11 S. Ct. 559, 35 L. Ed. 159, cited by appellants, it is laid down as the law by the Supreme Court of the United States that, "as between nations, the minimum limit of the territorial jurisdiction of a nation over tide-waters is a marine league from its coast," and that "the extent of the territorial jurisdiction of Massachusetts [and, we may interpolate, *any* coast state] over the sea adjacent to its coast is that of an independent nation, and, except so far as any right of control over this territory has been granted to the United States, this control remains with the state."

■ Applying the law as just quoted to the facts in the instant case, it is apparent that the place where appellants were engaged in "trolling for shrimp" was a place within the "territorial jurisdiction" of the state of Alabama, and that the judgment of conviction should be affirmed.

Affirmed.